# THE ATTORNEY GENERAL
## OF TEXAS

AUSTIN 11, TEXAS

GERALD C. MANN

W**XXXXXXXXXXXXX**

ATTORNEY GENERAL

Board of Water Engineers
Austin, Texas

Attention of Mr. A. H. Dunlap

Gentlemen:

Opinion No. O-1392

Re: Whether or not certain study
to be made in connection with
Red Bluff Water Power Control
District constitutes "State
business" directly concerning
State Board of Water Engineers;
and, whether or not it will be
necessary for the Board to ob-
tain an opinion from the Attor-
ney General approving each trip
made outside of the State of
Texas in connection with such
study.

We have your letter of the fifth of September containing two
questions to be answered by this department.

The facts given for our consideration are as follows:

"Through the agencies of the National Resources Committee,
and the U. S. Geological Survey, the U. S. Department of Agriculture,
the Federal Reclamation Bureau, and the U. S. Army Corps, in coopera-
tion with the States of Texas and New Mexico, a detailed and scientific
study and report is under way covering the water resources of the Pecos
River and tributaries from the source of said River in New Mexico to its
mouth in Texas.

"This study and report covers:

(a) Salinity of water and sources of inflow of salt.
(b) Water resources--quantity and quality.
(c) Losses of water and means of prevention.
(d) Use of water and protection of water supply.
(e) Sources, quantity and development of ground water.
(f) Flood damage.
(g) The consumation of a Compact between the States of Texas
and New Mexico for the division of the waters of the Pecos
River.
(h) Study of development of farm areas along the river valley
by means of pumping water from wells.
(i) Rectification of sub-irrigation of town of Pecos City

caused by escape of water from artesian wells.

"The 46th Legislature enacted S. B. No. 490, appropriating the sum of $30,000.00 for the use of the Red Bluff Water Power Control District. These funds are being used, exclusively, for the purpose of paying Texas' part of the cost of making said study and report. However, it is contemplated that part, if not all, of the writer's traveling expenses, and that of his assistant shall be paid from the appropriation made available to the State Board of Water Engineers.

"The very nature of the work, requires that investigations be made in both New Mexico and Texas, requiring those engaged in the study to go back and forth between these two States. To require the writer and his assistant to obtain an opinion from your Department covering each trip into New Mexico would be very inconvenient and cause considerable delay in completing the field work."

In connection with the above facts, you ask two questions:

(1) "Whether or not traveling expenses incurred by a member of the State Board of Water Engineers and an assistant outside of the boundaries of Texas in connection with a joint study and report on the Pecos River and tributaries, is for State business directly concerning the State Board of Water Engineers;

(2) "Whether said member and his assistant will be required to obtain an opinion from your Department covering each trip made outside of Texas in connection with said study, under the provisions of paragraph (c), of paragraph headed 'Traveling Expenses' of Section 2 of S. B. No. 42?"

Your first question divides itself into two parts, first, as to whether the trip contemplated by you is "state business" and second, whether it "directly concerns the State Board of Water Engineers."

In our opinion, the business proposed to be transacted by your member and an assistant as outlined in your letter, is such business as would naturally arise out of the performance of the public duties recognized by the Constitution of Texas, Article 59, Sec. (a), which provides that the control, storing, preservation and distribution of the State's storm and flood waters and the waters of its rivers and streams, for irrigation, power and all other useful purposes, are public rights and duties, and which authorizes the Legislature to pass such laws as are appropriate thereto. See, also, Article 7466, R. C. S. of Texas, 1925.

We find further support for the above conclusion in Senate Bill 490, Acts Regular Session of the 46th Legislature, Sec. 4, which makes an appropriation to the particular project which you propose to work on, namely, the Red Bluff Water Power Control District.

It is our further opinion that the business proposed to be attended to by your member and assistant "directly concerns the State Board of Water Engineers" because the "business" has to do with exercising the authority and carrying out the duties, imposed upon said body by law. Articles 7472c, 7472d and 7537a, R. C. S. of Texas, 1925; Sec. 4, Senate Bill 490, Acts Regular Session, 46th Legislature, supra.

As we construe your second question, what you want to know is whether, if on the present trip proposed to be made by your member and assistant, it is necessary for them to cross the State line more than once before returning to Austin, you will have to obtain the approval of the Attorney General prior to each particular crossing, in order to satisfy the statutory requirement quoted hereunder.

To answer this question, it is necessary to construe Section 2 (c), "Traveling Expenses", Senate Bill 427, Acts of the Regular Session, 46th Legislature, which we quote in part:

"(c) No traveling expenses shall be incurred by any employee of any of the departments, or other agencies of the Government, outside of the boundaries of the State of Texas, except for State business directly concerning his own department or agency and no such expenses shall be paid from State appropriations or out of any local or auxiliary funds by the State Comptroller to an employee of any agency of the Government, until and unless a written statement, signed by the Attorney General, advising that the purpose of the proposed trip, in his opinion, is for said State business purposes; which written opinion shall have been filed in advance with the State Comptroller, and signed duplicate thereof with the disbursing officer of such respective agency of the Government."

There are several possible interpretations of the above provision as applied to your statment of facts. Did the Legislature intend that a separate letter of approval be obtained from the Attorney General each time the State line is crossed by a State employee traveling on State expenses, where, as in your case, in making a survey, it may be necessary to cross back and forth several times; or, did it only intend that such a letter be obtained each time an employee left Austin on a trip and that "trip" be construed to mean each round trip journey from Austin; or, did it intend that one letter filed with the State Comptroller be sufficient for an indefinite number of crossings, so long as the purposes of the crossings come within the purpose of the particular trip.

In our opinion, the latter interpretation is the proper one. To arrive at the Legislature's intent, as is necessary in every case of construction, we must look not to the one word "trip", but to the whole bill. In this instance, we need only look to the portion quoted. Evidently, all the Legislature intended was that no trip be made out of the State unless its purpose be determined in advance by the Attorney General,

to constitute "State business". The Legislature did not say in so many words that a separate approval should be obtained for each individual trip and, in our opinion, to give it that construction, under the facts stated by you, would place a burden on the State Comptroller, the Attorney General and the department affected, not contemplated by the Legislature.

The Legislature vested no discretion in the Attorney General or the Comptroller as to how many trips a department could make, and properly so. Neither of these two officers would have authority to pass on the propriety or advisability of your making a trip so long as you had the money in your appropriation and the purpose of the trip was the transaction of State business. Then, once having obtained the opinion of the Attorney General that the purpose of a proposed trip was for "State business purposes" and filed it with the Comptroller, it would be requiring useless, repetitious work of all departments concerned to submit the same identical question with regard to each individual crossing made during the course of a particular trip, as the answers would of necessity, be identical with the one already in the Comptroller's files. In other words, it is the "purpose" of the proposed trip which the Attorney General must approve, and not its propriety or advisability, and once the Attorney General has determined that said purpose is for "State business purposes", it is not necessary, in our opinion, to again seek his opinion approving each crossing of the State line on that trip.

In answer to your second question, it is our opinion that this letter of approval is sufficient authority for crossing the State line, at State expense, as many times as the study requires on this particular trip, for the purposes herein stated, and concerning the Red Bluff Water Power Control District.

This opinion covers only the question of the necessity of obtaining the Attorney General's approval of each crossing of the State line made during the course of the proposed "trip" described in your letter. We are not passing on the question of the necessity of obtaining the approval of the Attorney General for subsequent "trips" from Austin, for the same purpose and in connection with the same project.

Trusting that this satisfactorily answers your inquiry, we are

Yours very truly

ATTORNEY GENERAL OF TEXAS

By James Noel /s/
James Noel
Assistant

JN:ET:br
APPROVED SEP 11, 1939

/s/ Gerald C. Mann
ATTORNEY GENERAL OF TEXAS